<div style="text-align:left; writing-mode: vertical">United States District Court<br>Northern District of California</div>

1
2
3
4
          UNITED STATES DISTRICT COURT
5
          NORTHERN DISTRICT OF CALIFORNIA
6
7
| | |
|---|---|
| JUAN ORTIZ, | Case No. 18-cv-07727-HSG |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ORDER CONFIRMING THAT TRIAL DATE IS VACATED AND SETTING CASE MANAGEMENT CONFERENCE** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | Re: Dkt. Nos. 56, 57, 65 |

Plaintiff Juan Ortiz ("Ortiz" or "Plaintiff") brings this suit against Officers Kevin Conway ("Conway"), Sam Park ("Park"), Michael Vigil ("Vigil"), Bernard Artificio ("Artificio"), and Brenda Sosa ("Sosa") (collectively, "Individual Defendants") and the City and County of San Francisco (altogether, "Defendants"), alleging claims under 42 U.S.C. § 1983 ("Section 1983") for excessive force, deliberate indifference, and municipal liability, as well as various state law claims. Pending before the Court is Defendants' motion for summary judgment as to various claims, briefing for which is complete. *See* Dkt. Nos. 56 ("Mot."), 66 ("Opp."), 70 ("Reply"). Concurrently, Defendants and Plaintiff file administrative motions to seal accompanying exhibits. *See* Dkt. Nos. 57, 65. The Court held a hearing on the motion for summary judgment on November 7, 2019. Dkt. No. 73. The Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment and **GRANTS in part** and **DENIES in part** the motions to seal.

## I.    BACKGROUND

On June 5, 2018, Plaintiff was pulled over by San Francisco Police officers after they received reports that Plaintiff had threatened two individuals with a gun. Dkt. No. 66-2, Ex. 1 at 18–19. Plaintiff was transported to San Francisco County Jail, where he had to comply with a strip search as a new inmate. Dkt. No. 69-10, Ex. J at 61:8-62:3. Defendant Conway directed

Plaintiff into a dress-in cell to conduct the strip search and instructed Plaintiff to remove his clothing and put the clothing into the plastic bag provided. *Id.* at 71:7-14; Dkt. No. 69-1, Ex. A at 42:22-25.

The parties present different accounts of what followed. Plaintiff alleges that he informed Conway that he was cold, had not taken his medication that evening, and asked if he could keep his shirt on. Dkt. No. 66-2, Ex. 1 at 35:12-21. Conway then got "angry" and started "cussing [Plaintiff] out," so Plaintiff took off his shirt and "tossed it at [Conway's] feet." *Id.* at 35:20-36:1, 44:17. Conway then "lunged at [Plaintiff], took a punch at [him]" and then "turned [his] head around and slammed [his head] into the wall." *Id.* at 57:23-25. When additional officers came in to assist, they threw Plaintiff over the bench. Dkt. No. 69-1, Ex. A at 50:2-14. Defendants, on the other hand, allege that Plaintiff "was agitated, frustrated, and upset," "was yelling and gesturing with his hands," and that Plaintiff "turn[ed] towards [Conway] and thr[ew] the shirt, which Conway perceived as a threat." Mot. at 4 (citing Dkt. No. 69-10, Ex. J at 63:5-13, 98:13, 98:23-24). Conway then stepped into the dressing area and used a "rear-wrist lock maneuver" to control Plaintiff. Dkt. No. 69-10, Ex. J at 93:4-8. Thereafter, several other officers including Vigil, Park, and Artificio became aware of the commotion and came to assist. Both parties agree that the additional officers handcuffed and shackled Plaintiff. Dkt. No. 69-1, Ex. A at 50:2-14.[1] A nurse went into the dress-in cell minutes after Plaintiff was restrained. Dkt. 69-6, Ex. F at 8:17-9:04; Dkt. No. 69-7, Ex. G at 8:24-9:08.

Defendants Conway, Vigil, and Park then took Plaintiff (who was naked, handcuffed, and shackled) backwards to a safety cell down the hallway. Dkt. No. 69-1, Ex. A at 69:22-24; Dkt. No. 69-10, Ex. J at 172:24-173:4. Again, the parties' allegations of what happened next differ. Plaintiff alleges that the officers threw him over a concrete slab, "[Conway] with his knee on [Plaintiff's] back, beating [Plaintiff's] ribs." Dkt. No. 66-5, Ex. 5 at 251-252:19. Plaintiff alleges that there was a female deputy outside of the safety cell door that was laughing as the other

---

[1] At times, Plaintiff confuses his allegations regarding the dress-in incident with those about the safety cell incident. *Compare* Opp. at 3 *with* Dkt. No. 66-5, Ex. 4 at 251-53. When asked about this at the hearing, Plaintiff's counsel confirmed that due to the injuries, Plaintiff has a difficult time remembering the exact sequence of events. *See* Dkt. No. 73.

United States District Court
Northern District of California

1   officers beat him.  *Id.* at 254:10-16.  Defendants allege that they simply placed him in a safety cell

2   since he was taking an "aggressive stance and thr[owing] his clothing [at a] deputy."  Dkt. No. 69-

3   3, Ex. C.  Defendants also provide medical logs of the visits made by medical staff to Plaintiff

4   while he remained in the safety cell overnight.  *See* Dkt. No. 57-4, Ex. I.  Plaintiff alleges that no

5   one provided him with his blood pressure medication despite repeated requests.  Dkt. No. 69-2,

6   Ex. A at 91:1–6.

7        Plaintiff was released on bail the following day, June 6, 2018.  Plaintiff went to the

8   hospital on June 7, 2018, and was diagnosed with various injuries including contusions and a brain

9   bleed.  *See* Dkt. No. 66-7, Ex. 6 at 875–877; *see also* Dkt. No. 66-8, Ex. 7.

10  ## II.   LEGAL STANDARD

11       Summary judgment is proper when a "movant shows that there is no genuine dispute as to

12  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

13  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

14  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the

15  record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The

16  Court views the inferences reasonably drawn from the materials in the record in the light most

17  favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

18  574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

19  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

20  *Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

21       The moving party bears both the ultimate burden of persuasion and the initial burden of

22  producing those portions of the pleadings, discovery, and affidavits that show the absence of a

23  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

24  moving party will not bear the burden of proof on an issue at trial, it "must either produce

25  evidence negating an essential element of the nonmoving party's claim or defense or show that the

26  nonmoving party does not have enough evidence of an essential element to carry its ultimate

27  burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

28  (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must

*United States District Court*
*Northern District of California*

3

1   also show that no reasonable trier of fact could not find in its favor.  *Celotex Corp.*, 477 U.S. at

2   325.  In either case, the movant "may not require the nonmoving party to produce evidence

3   supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

4   *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial

5   burden of production, the nonmoving party has no obligation to produce anything, even if the

6   nonmoving party would have the ultimate burden of persuasion at trial."  *Id.* at 1102–03.

7        "If, however, a moving party carries its burden of production, the nonmoving party must

8   produce evidence to support its claim or defense."  *Id.* at 1103. In doing so, the nonmoving party

9   "must do more than simply show that there is some metaphysical doubt as to the material facts."

10  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with

11  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91

12  F.3d 1275, 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its

13  claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp.*, 477 U.S.

14  at 323.

15  **III.    ANALYSIS**

16       Plaintiff alleges six causes of action: (1) violation of Section 1983 for use of excessive

17  force; (2) violation of Section 1983 based on unconstitutional custom or policy by a municipality

18  under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); (3) violation of

19  Section 1983 based on deliberate indifference; (4) violation of the California Bane Act; (5)

20  negligence; and (6) battery.  *See* Dkt. No. 30 ¶¶ 24–62.  Defendants move for summary judgment

21  on the deliberate indifference, *Monell*, and Bane Act causes of action.  Defendants also move for

22  partial summary judgment on the excessive force, negligence, and battery causes of action.  *See*

23  Mot.  Because Plaintiff does not oppose Defendants' motion for summary judgment as to the

24  *Monell* claim, Opp. at 22, the Court **GRANTS** Defendants' motion as to that claim.  The Court

25  considers the remaining arguments in turn.

26      **A.    Deliberate Indifference**

27       "The elements of a pretrial detainee's medical care claim against an individual defendant

28  under the due process clause of the Fourteenth Amendment are: (i) the defendant made an

intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quoting *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alterations in original)). This requires the plaintiff "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Defendants argue that Plaintiff fails to demonstrate the third and fourth elements—namely, Plaintiff is unable to show that Defendants acted unreasonably (given that he received medical care "within minutes of the incident"), or that any delay caused him injury. Mot. at 9–10. The Court agrees with both of Defendants' arguments, viewing the record in the light most favorable to Plaintiff.

After the incident in the dress-in cell, Nurse Johnnie Williams entered the area to evaluate Plaintiff. Dkt. 69-6, Ex. F at 8:17-9:04; Dkt. No. 69-7, Ex. G at 8:24-9:08. In his deposition, Plaintiff acknowledged that Nurse Williams came into the dress-in cell (although he did not remember the evaluation), Dkt. No. 69-1, Ex. A at 236:19–237:9, and acknowledged that a nurse later came into the safety cell, *id.* Ex. A at 250:11–250:17, and does not contest Defendants' evidence showing numerous subsequent evaluations by medical staff, *see e.g.*, Mot. at 6–7. Instead, Plaintiff argues that Individual Defendants' failure to inform the medical staff of possible harm caused by the beating was objectively unreasonable. The Court disagrees. The video evidence establishes that Defendants promptly summoned medical attention after the incident. *See* Dkt. 69-6, Ex. F 8:17-9:04. That the officers could have taken additional precautionary actions does not render their actions objectively unreasonable given that they called for medical assistance. *See Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006)

1    (holding that "a police officer who promptly summons the necessary medical assistance has acted

2    reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR.").

3    To the extent that Plaintiff argues that the medical staff's failure to identify his head trauma was

4    unreasonable, "negligent diagnosis or treatment of a medical condition is not itself sufficient."

5    *Weaver v. City & Cty. of San Francisco*, No. 14-cv-03654-LB, 2016 WL 913372, at *8 (N.D. Cal.

6    Mar. 10, 2016) (citing *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)); *see also Jackson*

7    *v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("[A] plaintiff's showing of nothing more than a

8    difference of medical opinion as to the need to pursue one course of treatment over another was

9    insufficient, as a matter of law, to establish deliberate indifference") (internal quotation marks

10   omitted).

11        Plaintiff also argues that Defendant Conway's failure to inform the medical staff that he

12   needed his heart medication was also objectively unreasonable.  However, as Defendants note,

13   Plaintiff does not point to any evidence showing that Defendant Conway was aware of Plaintiff's

14   medical history, or that Plaintiff clearly stated the urgency of his condition.  In his own deposition,

15   Plaintiff stated, "I asked him if I could please keep [my shirt] on because I was cold. I hadn't had

16   my medications yet."  Dkt. No. 70-2, Ex. S at 35:7–35:17.  "In order to know of the risk, it is not

17   enough that the [defendant] merely 'be aware of facts from which the inference could be drawn

18   that a substantial risk of serious harm exists, [ ] he must also draw that inference.'"  *Gibson v. Cty.*

19   *of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833

20   F.3d 1060 (quoting *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001)).  Additionally, it is

21   undisputed that the medical staff were aware that Plaintiff needed his medication and were

22   attempting to procure it.  When Plaintiff requested medication from the medical staff after being

23   released from the safety cell, he was told that they had been trying to reach the VA.  Dkt. No. 69-

24   1, Ex. A at 91:7–92:4.  These facts, even taking Plaintiff's version of events as true, do not

25   establish objective unreasonableness by Defendants.

26        As to the causation element, taking Plaintiff's version of the facts as true, he has not shown

27   that any delay in going to a hospital was the cause of any injury.  This failure alone supports the

28   grant of summary judgment.  Plaintiff points to his concern of a heart attack while in the safety

United States District Court
Northern District of California

6

1  cell overnight and the diagnosis of a brain bleed that he received at the hospital after release to

2  argue causation.  Opp. at 20.  However, Plaintiff's arguments simply reiterate his excessive force

3  claim under the deliberate indifference cause of action.  Notably, none of these arguments point to

4  evidence that any unreasonable delay by Defendants was the reason for the injury.

5        Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to

6  Plaintiff's deliberate indifference claim and need not address Defendants' qualified immunity

7  arguments as to this claim.

8        **B.    Excessive Force**

9        Defendants argue that that all Individual Defendants are entitled to qualified immunity for

10  force used during the dress-in.  Mot. at 14–15.  Defendants also argue that because Defendant

11  Sosa did not use any force against Plaintiff, she is entitled to summary judgment on Plaintiff's

12  excessive force claim, as well as the relevant state law claims.  *Id.* at 11.  Finally, Defendants

13  argue that because Defendant Artificio did not use any force against Plaintiff after the dress-in

14  incident, he is entitled to partial summary judgment on the excessive force claim for the period of

15  time during the safety cell placement.  *Id.* at 12.  The Court addresses each argument in turn.

16        **i.    Qualified Immunity**

17        Defendants argue that all Individual Defendants are entitled to qualified immunity for the

18  dress-in incident part of the excessive force claim.  The defense of qualified immunity protects

19  "government officials . . . from liability for civil damages insofar as their conduct does not violate

20  clearly established statutory or constitutional rights of which a reasonable person would have

21  known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of

22  qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the

23  deprivation of a constitutional right, and (2) whether such right was clearly established at the time

24  of the deprivation.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*,

25  535 U.S. 194, 201 (2001)).  The court may exercise its discretion in deciding which prong to

26  address first, in light of the particular circumstances of each case.  *Id.* at 236 (noting that while the

27  *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either

28  prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary

7

1  judgment," and must, as in other cases, view the evidence in the light most favorable to the

2  nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

3      Plaintiff has alleged that Defendants used excessive force in violation of his Fourth

4  Amendment rights. Such a claim is reviewed under the Fourth Amendment's "objective

5  reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To evaluate the

6  reasonableness of Defendants' actions, the Court "must balance the severity of the intrusion on the

7  individual's Fourth Amendment rights against the government's need to use force." *Newmaker v.*

8  *City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016). The Ninth Circuit employs a three-step

9  analysis:

10      First, [the Court] must assess the severity of the intrusion on the
       individual's Fourth Amendment rights by evaluating the type and
11      amount of force inflicted. Even where some force is justified, the
       amount actually used may be excessive. Second, [the Court]
12      evaluate[s] the government's interest in the use of force. Finally, [the
       Court] balance[s] the gravity of the intrusion on the individual against
13      the government's need for that intrusion.

14  *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011) (internal quotations and citations

15  omitted). "A desire to resolve quickly a potentially dangerous situation is not the type of

16  governmental interest that, standing alone, justifies the use of force that may cause serious injury."

17  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

18      Addressing first whether Plaintiff has established a deprivation of a constitutional right,

19  accepting his version of facts as true at this stage, the Court finds that he has. A jury could

20  reasonably conclude that the alleged intrusion on Plaintiff's Fourth Amendment rights, measured

21  by the "type and amount of force inflicted," was substantial. *Id.* at 1279. Taking Plaintiff's

22  version of the facts as true, Defendant Conway responded with significant physical force to

23  Plaintiff throwing his shirt near Conway's feet. Plaintiff alleges that Defendant Conway "punched

24  Plaintiff in the face, grabbed him by the back of his head and slammed his face into the concrete

25  wall." Opp. at 3; Dkt. No. 66-2, Ex. 1 at 44:17–44:20, 57–58. Given that Plaintiff was essentially

26  naked (making it clear that he had no weapon) and contained within the dress-in cell, a jury could

27  find that these facts show excessive force and a violation of Plaintiff's rights.

28      The Defendants' only asserted interest in the use of force was reacting to an action that

United States District Court
Northern District of California

8

1    they perceived as a threat.  Mot. at 14.  However, "a simple statement by an officer that he fears

2    for his safety or the safety of others is not enough; there must be objective factors to justify such a

3    concern."  *Deorle*, 272 F.3d at 1281.  Defendants point to Plaintiff's gesturing, raising his hands

4    while approaching Defendant Conway, and yelling as factors that heightened Defendant Conway's

5    perception of Plaintiff as a threat.  Mot. at 14–15.  The video of the incident puts some of

6    Defendants' characterizations into question, *see* Dkt. 69-7, Ex. G at 3:58-6:06, but even taking

7    them at face value, Plaintiff's circumstances—being contained in a dress-in cell within a police

8    station with no weapon—could lead a jury to the conclusion that the amount of force used was

9    excessive.  Accordingly, when balancing the nature of the intrusion against Defendants' asserted

10   need for that intrusion, the Court finds that taking Plaintiff's version of the facts as true, he has

11   shown the deprivation of a constitutional right.

12            Under the second prong of the qualified immunity inquiry, "[a]n officer 'cannot be said to

13   have violated a clearly established right unless the right's contours were sufficiently definite that

14   any reasonable official in [his] shoes would have understood that he was violating it.'"  *City &*

15   *Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v.*

16   *Rickard*, 572 U.S. 765, 778 (2014)).  While this does not "require a case directly on point, [ ]

17   existing precedent must have placed the statutory or constitutional question beyond debate."

18   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Plaintiff here alleges that Defendant Conway's

19   forceful response to Plaintiff's tossing his shirt towards Defendant Conway's feet constituted an

20   "unprovoked and unjustified" attack, contrary to clearly established law.  Opp. at 13.  Plaintiff

21   cites to *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991), and *Lolli v. Cty. of Orange*, 351

22   F.3d 410, 421–22 (9th Cir. 2003), in arguing that existing precedent clearly established that the

23   actions taken in the dress-in cell violated Plaintiff's constitutional rights.  In *Felix*, the defendant

24   officer threw a handcuffed plaintiff inmate across a hallway for disagreeing with defendant

25   officer's characterization of an incident.  939 F.3d at 700–01.  In *Lolli*, plaintiff was being held in

26   a holding cell when he asked defendant officers if he could receive some food due to his diabetic

27   condition.  351 F.3d at 416.  In response, plaintiff alleged that defendant officers pulled him to the

28   ground and began to beat him.  *Id.*  Both cases involved defendants reacting to verbal statements

United States District Court
Northern District of California

9

by plaintiffs, as opposed to actions, which is distinct from the facts presented here.  The surveillance video shows Plaintiff's possible agitation while approaching and then throwing a shirt towards Defendant Conway.  *See* Dkt. 69-7, Ex. G at 3:58-6:06.  While this distinction may seem narrow, the qualified immunity standard is exacting, "protect[ing] 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).  Plaintiff's cited cases do not support the proposition that Defendants violated law that was clearly established at the time of the incident, and the Court has not found any.  Whether this result (which the Court believes to be compelled by controlling authority) is just is a question that may be clarified soon by the Supreme Court.  *See* Jay Schweikert, *Supreme Court Will Soon Decide Whether To Reconsider Qualified Immunity*, CATO INSTITUTE (Apr. 28, 2020, 4:26 PM), https://www.cato.org/blog/may-15th-supreme-court-will-finally-decide-whether-hear-cases-calling-abolition-qualified.

Accordingly, the Court holds that Defendants are entitled to qualified immunity and their motion for partial summary judgment as to the dress-in portion of the excessive force claim is **GRANTED**.

### ii.   Defendant Sosa

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  An officer must be an "integral participant" in the unlawful conduct, not "a mere bystander."  *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).  This requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007).  Plaintiff alleges only that he remembers a female deputy laughing at the door.  Dkt. No. 66-2, Ex. 1 at 55:7–55:13.  Plaintiff does not allege that Defendant Sosa touched him or otherwise participated in the incidents.

Defendants argue that these allegations are insufficient to show that Defendant Sosa was an integral participant in the excessive force allegations.  In response, Plaintiff argues that under *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004), officers need not "directly engage in the unconstitutional conduct themselves" to be liable under § 1983.  While true, the facts of *Boyd* are

United States District Court
Northern District of California

significantly different from the facts alleged against Defendant Sosa.  In *Boyd*, all officers were present for the execution of a search warrant and all were aware of the decision to use a flash-bang grenade without considering less-than-lethal alternatives.  374 F.3d at 780; *see also Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989).  Here, all officers were present because the incident occurred at the jail, not because they were all aware of the circumstances surrounding Plaintiff's arrest or the incident that occurred in the dress-in area.  Plaintiff cites no facts connecting Defendant Sosa to the incident beyond her mere presence at the jail.  The Court finds this insufficient to create any genuine issue of fact as to integral participation by Defendant Sosa, and accordingly **GRANTS** Defendant's motion for summary judgment as to the excessive force claim against her.  For the same reasons, the Court also **GRANTS** Defendant's motion for summary judgment as to the state law claims (battery, Bane Act, and negligence) against Defendant Sosa.

### iii.   Defendant Artificio

Defendants also argue that because Plaintiff admits that Defendant Artificio did not participate in the escort or placement of Plaintiff in the safety cell, he is entitled to partial summary judgment as to that part of the excessive force claim and related state law claims.  Mot. at 12.  The Court agrees.  Plaintiff cites no facts connecting Defendant Artificio with any actions beyond the dress-in incident, and as detailed above the Court granted partial summary judgment regarding that incident on qualified immunity grounds.[2]  Since no disputed facts of excessive force remain against Defendant Artificio, the Court **GRANTS** Defendant's motion for summary judgment as to the excessive force claim and related state law claims against Defendant Artificio.

//

---

[2] Plaintiff cites to *Lawson v. City of Seattle*, No. 12-cv-1994-MAT, 2014 WL 1593350, at *10 (W.D. Wash. Apr. 21, 2014), and *Hall v. Cty. of Whatcom*, No. 09-cv-1545-RSL, 2011 WL 6179209 (W.D. Wash. Dec. 13, 2011), in support of his argument that it would be impracticable to parse the excessive force claim at this stage in the proceeding.  Due to the specific facts presented here and the Court's holding as to qualified immunity for the dress-in incident, the Court finds these cases unpersuasive.  In *Lawson*, the court declined to parse the excessive force claim to separate "the pointing of the firearm, routine handcuffing techniques, and the alleged push of [plaintiff's] face into the ground, and . . . the kicking of [plaintiff]."  2014 WL 1593350, at *10.  Here, it is much easier to temporally separate the dress-in incident from the escort and safety-cell incident.  Further, the only remaining portion of the excessive force claim involves the escort and safety cell incident.

United States District Court
Northern District of California

**C.    Bane Act**

Defendants also seek summary judgment on Plaintiff's Bane Act claim.  The Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation, or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks omitted). California Civil Code Section 52.1 "provides [the] cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion." *Id.* (internal quotation marks omitted).  "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." Id. at 1040–41.

To establish a Bane Act claim, plaintiff must ultimately prove "both (1) a violation of a 'state or federal constitutional or legal right'; and (2) that the violation was achieved through 'threats, intimidation, or coercion.'" *Inman v. Anderson*, 294 F. Supp. 3d 907, 928–29 (N.D. Cal. 2018) (quoting *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (Ct. App. 2015)). Although the Ninth Circuit held that "the Bane Act does not require the threat, intimidation or coercion element of the claim to be transactionally independent from the constitutional violation alleged," the Bane Act does require "a specific intent to violate an [individual's constitutional] right . . . ." *Reese*, 888 F.3d at 1043 (internal quotation marks omitted).  Thus, evidence of an unreasonable use of force alone does not satisfy the Bane Act's intent requirement.  Instead, a plaintiff must show the officer "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Because Plaintiff must allege specific intent as to each Defendant, the Court **GRANTS** summary judgment as to Defendants Park, and Vigil (having previously granted summary judgment as to Defendants Sosa and Artificio).  Plaintiff provides no specific facts to show any intent as to these Defendants.  Instead, Plaintiff simply points to their participation after becoming aware of an incident occurring at dress-in.  *See* Opp. 18–19.  This is insufficient.  However, the Court however **DENIES** summary judgment as to Defendant Conway.  Taking Plaintiff's version

12

1    of facts as true at this stage, a jury could reasonably find that Defendant Conway harbored the

2    specific intent to use unreasonable force against Plaintiff when he "became enraged" at Plaintiff

3    and continued to exhibit force by placing "his knee on [Plaintiff's] back, beating [Plaintiff's] ribs,"

4    in the safety cell.  Dkt. No. 66-5, Ex. 5 at 251-252:19.  Dkt. No. 30 ¶ 19.

5    **IV.    MOTIONS TO SEAL**

6            Courts generally apply a "compelling reasons" standard when considering motions to seal

7    documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

8    *v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  "This standard derives from the

9    common law right 'to inspect and copy public records and documents, including judicial records

10   and documents.'"  *Id.* (quoting *Kamakana*, 447 F.3d at 1178).  "[A] strong presumption in favor of

11   access is the starting point."  *Kamakana*, 447 F.3d at 1178 (quotations omitted).  To overcome this

12   strong presumption, the party seeking to seal a judicial record attached to a dispositive motion

13   must "articulate compelling reasons supported by specific factual findings that outweigh the

14   general history of access and the public policies favoring disclosure, such as the public interest in

15   understanding the judicial process" and "significant public events."  *Id.* at 1178–79 (quotations

16   omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in

17   disclosure and justify sealing court records exist when such 'court files might have become a

18   vehicle for improper purposes,' such as the use of records to gratify private spite, promote public

19   scandal, circulate libelous statements, or release trade secrets."  *Id.* at 1179 (quoting *Nixon v.*

20   *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  "The mere fact that the production of records

21   may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not,

22   without more, compel the court to seal its records."  *Id.*

23           The Court must "balance[] the competing interests of the public and the party who seeks to

24   keep certain judicial records secret.  After considering these interests, if the court decides to seal

25   certain judicial records, it must base its decision on a compelling reason and articulate the factual

26   basis for its ruling, without relying on hypothesis or conjecture."  *Id.*  Civil Local Rule 79-5

27   supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a

28   document or portions of it under seal must "establish[] that the document, or portions thereof, are

United States District Court
Northern District of California

13

1    privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The

2    request must be narrowly tailored to seek sealing only of sealable material."  Civil L.R. 79-5(b).

3    **A.    Defendant's Motion to File Under Seal**

4         Defendants seek to file under seal six exhibits attached to their motion for summary

5    judgment, Exhibits E, F, G, H, I, and Q to the Declaration of Renee E. Rosenblit ("Rosenblit

6    Declaration").  Dkt. No. 57.  Because Defendants move to file exhibits attached to a dispositive

7    motion, the Court will apply the compelling reasons standard.

8         Exhibit E is a copy of the Red Book entry, presumably a sign-in log book for the jail, dated

9    June 5, 2018, which Defendants seek to file under seal because it contains "official information,"

10   including "the names and information regarding non-defendant deputies and staff and other

11   inmates, as well as security procedures."  Dkt. No. 57-1 ¶ 4.  While Defendants cite to California

12   Evidence Code Section 1040 and allege that the reports are privileged, they must do more than

13   make a conclusory assertion that the documents implicate privacy interests and are privileged.  *See*

14   *Kamakana*, 447 F.3d at 1186 (affirming denial of motion to seal documents that city asserted were

15   subject to "the law enforcement privilege, the official information privilege, privacy interests, and

16   embarrassment," because "none of these had been asserted with sufficient particularity" as to how

17   disclosure would inflict any specific prejudice or harm).  Federal common law recognizes a

18   qualified privilege for official information, but this privilege is neither automatic nor absolute, and

19   courts must weigh the "potential benefits of disclosure against the potential disadvantages."

20   *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990).  The balancing test "is

21   moderately pre-weighted in favor of disclosure."  *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D.

22   Cal. 1987).

23        Balancing the interests here, the Court finds that benefits of disclosure outweigh the

24   disadvantages and **DENIES** Defendant's motion to seal Exhibit E.  The exhibit includes highly

25   relevant documentation regarding the dress-in incident that was created immediately after the

26   incident.  The Court recognizes that the exhibit also includes the names of other inmates and

27   officers, but as Defendants themselves suggest, they can file an amended motion to file under seal

28   with a partially redacted exhibit that would narrowly tailor the sealing request.  That Defendants

United States District Court
Northern District of California

14

1    previously sought to seal the same document and their request was granted does not change the

2    Court's view.  *See* Dkt. No. 50, 63.  That determination was made under a lower "good cause"

3    standard since it was attached to a non-dispositive motion, unlike the "compelling reasons"

4    standard that Defendants must meet for this summary judgment motion.  *See Kamakana*, 447 F.3d

5    at 1179–80.

6          Exhibits F, G, and H are copies of jail surveillance video from County Jail 1 on June 5,

7    2018.  Defendants seek to seal the information as the videos "show the layout of the jail, entry and

8    exit points, angles of the cameras, and other securities [sic] concerns."  Dkt. No. 57-1 ¶ 6.

9    Analyzing this information again under the same qualified privilege analysis, the Court find that

10   while the benefits of disclosure are significant, the disadvantages are substantially higher.  These

11   security concerns, in addition to privacy concerns of third parties and Plaintiff, who appears naked

12   in two of the videos, outweigh the benefit of public disclosure at this stage in the case.

13   Accordingly, the Court **GRANTS** Defendant's motion to seal Exhibits F, G, and H.

14         Exhibit I is Plaintiff's jail medical records from June 5–6, 2018.  Dkt. No. 57-1 ¶ 7.

15   Defendants argue that the "request to seal is based on plaintiff's right to privacy and federal and

16   state laws protecting the confidentiality of an individual's personal health information."  *Id.*  The

17   Court agrees that health records properly meet the compelling reasons standard.  *See San Ramon*

18   *Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. 10–cv–02258–SBA, 2011 WL 89931, at *1

19   n.1 (N.D. Cal. Jan. 10, 2011) (finding that confidentiality of medical records under the Health

20   Insurance Portability and Accountability Act of 1996 outweighed *Kamakana* presumption in favor

21   of public access to court records).  The Court **GRANTS** Defendant's motion to seal Exhibit I.

22         Exhibit Q contains Individual Defendants' training records, which are part of their

23   personnel files.  While Defendants cite numerous statutes and constitutional provisions to allege

24   that the reports are protected by "official information" privilege, they offer no explanation of why

25   such a privilege should apply.  The Court finds that Defendants have not carried their burden of

26   articulating "compelling reasons supported by specific factual findings that outweigh the general

27   history of access and the public policies favoring disclosure" and **DENIES** Defendant's request to

28   seal Exhibit Q.  *Kamakana*, 447 F.3d at 1178.

United States District Court
Northern District of California

15

**B.    Plaintiff's Motion to File Under Seal**

Plaintiff seeks to file under seal Exhibits 1–10 to the Declaration of Patrick Buelna ("Buelna Declaration").  Dkt. No. 65.

Exhibits 1, 2, and 3 are also jail surveillance videos from County Jail 1 taken on June 5, 2018.  While the only basis Plaintiff proffers for sealing the exhibits is that "Defendants designated the exhibits as 'CONFIDENTIAL,'" which is typically insufficient to meet the compelling reasons standard, the exhibits are the same as Exhibits F, G, and H that Defendants seek to file under seal.  For the same reasons noted above, the Court **GRANTS** Plaintiff's motion to file under seal Exhibits 1, 2, and 3.  Similarly, Plaintiff's Exhibit 5 is the Red Book entry from June 5, 2018 that Defendants seek to seal as Exhibit E, discussed above.  For the same reasons, the Court **DENIES** Plaintiff's motion to file under seal Exhibit 5, though Plaintiff may similarly file an amended motion to seal a partially redacted version of the document.

Exhibit 4 is a copy of the Safety Cell Placement Form, while Exhibits 6, 7, 8, and 9 are recorded Internal Affairs interviews of Defendants Artificio, Sosa, Park, and Vigil.  Dkt. No. 65-1 at 2.  Again, the only basis that Plaintiff proffers for sealing the exhibits is that "Defendants designated the exhibits as 'CONFIDENTIAL.'"  Designation as "Confidential" is not sufficient, as that is merely the parties' initial designation of confidentiality to establish coverage under the stipulated protective order.  *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2015 WL 5117083, at *5 (N.D. Cal. Aug. 31, 2015) ("But good cause 'cannot be established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be confidential'") (quoting *Bain v. AstraZeneca LP*, No. 09-cv-4147, 2011 WL 482767, at *1 (N.D. Cal. Feb. 7, 2011)).  Thus, Plaintiff's motion does not comply with Civil Local Rule 79- 5(d)(1)(A).  In addition, Defendants did not file a declaration establishing that any of these exhibits are sealable.  As the designating party for the materials, Defendants did not comply with Civil Local Rule 79-5(e)(1), because they did not file a Declaration within four days of Plaintiff's motion. See Civ. L.R. 79-5(e)(1).  Accordingly, the Court **DENIES** Plaintiff's motion to seal Exhibits 4, 6–9.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## V.   CONCLUSION

The Court finds that Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim, and therefore **GRANTS** Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim.  The Court also **GRANTS** Defendants' unopposed motion for summary judgment on Plaintiff's *Monell* claim.  The Court further finds that Defendants are entitled to qualified immunity as a matter of law for the dress-in incident and therefore **GRANTS** Defendants' motion for partial summary judgment as to the Fourth Amendment claim.  The Court also **GRANTS** Defendants' motion for summary judgment as to Defendants Sosa and Artificio on Plaintiff's Fourth Amendment claim, battery, negligence, and Bane Act claims.  Finally, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's motion for summary judgment as to Plaintiff's Bane Act claim: while no genuine dispute as to any material facts remains as to Defendants Artificio, Park, and Vigil, a dispute remains as to Defendant Conway.

The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' and Plaintiff's administrative motions to file under seal.  Dkt. Nos. 57, 65.  The Court **DIRECTS** Defendants to file, within five days of the date of this order, public versions of Exhibit E and Q to the Rosenblit Declaration or an amended motion to seal that narrowly tailors the sealing request as explained above.  *See* Dkt. No. 57-1.  Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the administrative motions are granted will remain under seal.  The Court also **DIRECTS** Plaintiff to file, within five days of the date of this order, public versions of Exhibits 4, 5, 6, 7, 8, and 9 to the Buelna Declaration or an amended motion to seal that narrowly tailors the sealing request as explained above.  *See* Dkt. No. 65-1.

//

//

//

//

17

1      Pursuant to General Order 72-3, the August 17, 2020 trial date in this matter is

2  **VACATED**.  The Court sets a telephonic case management conference for June 9, 2020 at 2:00

3  p.m. to discuss the schedule and plan for resolving this matter.  All counsel shall use the following

4  dial-in information to access the call: Dial-In: 888-808-6929/Passcode: 6064255.  For call clarity,

5  parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties

6  shall use landlines.  The parties are further advised to ensure that the Court can hear and

7  understand them clearly before speaking at length.  The parties do not need to file any further joint

8  statement before the telephonic conference.

9

10      **IT IS SO ORDERED.**

11  Dated:   5/29/2020

12

13  HAYWOOD S. GILLIAM, JR.
    United States District Judge